CLEVELAND INS. CO. (STARKWEATHER v.). See Cases Nos. 13,308 and 13,309.

## Case No. 2,890.

CLEVELAND, P. & A. R. CO. v. FRANKLIN CANAL CO. et al.

[1 Pittsb. Leg. J. No. 36.]

Circuit Court, W. D. Pennsylvania. 1853.

SPECIFIC PERFORMANCE OF TAINTED CONTRACT — FOLLOWING STATE DECISIONS — POWER OF CONGRESS—POST ROADS.

[1. A foreign railroad corporation, by agreement with a domestic corporation, secured most of its corporate stock, and the building and control of a railroad totally different from that required by the latter's charter. Held, that it had no standing in equity to enforce performance of such contract, or to restrain interference with the line of road so built. Following Com. v. Franklin Canal Co., 21 Pa. St. 117.]

[2. A decision of a state court declaring a railroad to be different in character, location, and object from that authorized by the charter from the state legislature under which it was constructed, though not followed by a judgment or decree, is binding upon the federal courts within the state.]

[3. The power given by the constitution to establish post roads means such roads as are regularly laid out by the authority of the states, or by counties under the laws of the states.]

[4. The act of congress making all roads post roads means only such as have charters from the several states, and not such as are built in derogation of law.]

[5. Such act does not give to the United States, to a mail contractor, or to the owner of a road the right to an injunction to restrain a threatened injury.]

[In equity. Bill by the Cleveland, Painesville and Ashtabula Railroad Company against the Franklin Canal Company and sundry persons.]

A. W. Loomis, E. M. Stanton, C. Shaler, and Th. Umhstaetter, for complainants.

S. W. Black, E. Babbitt, and J. Thompson, for respondents.

IRWIN, District Judge. This is a bill for a specific performance, and an injunction to restrain the respondents from entering upon the railroad track of the Franklin Canal Company in the city of Erie, and injuriously destroying and disturbing the said road and causeways, as it is alleged is threatened to be done by them. The complainants, under a charter from the state of Ohio, as they allege, have made a railroad extending from Cleveland, in said state, to the boundary line of the state of Pennsylvania, parallel with the shore of Lake Erie, towards the city of Erie, upon which they are engaged in transporting merchandise and passengers, and, under contract with the postmaster general, the mail of the United States. They further allege that the Franklin Canal Company is a body corporate and politic, created by the laws of Pennsylvania, and that they have constructed a line of railroad connecting and joining with the railroad of complainants, extending from the point of junction at the boundary line of the state of Pennsylvania to Peach street, in the city of Erie, which is used by the complainants under an agreement with the said Franklin Canal Company. The charter from the state of Ohio to the complainants extends only to such rights as are granted to them within that state; which, alone, does not enable them, for the causes alleged in the bill, to become complainants in this court. If they have any such right, it is derived from their agreement with the Franklin Canal Company. It becomes necessary, therefore, to inquire—1st. What are the chartered rights of the Franklin Canal Company? 2d. What is the nature of the agreement between the complainants and that company, and whether by it they can sustain this application for an injunction?

By an act of assembly of the 27th of April, 1844, the Franklin Canal Company became vested with the title to the Franklin division of the Pennsylvania Canal from the aqueduct over French creek, on the French creek feeder, to the mouth of French creek, together with all the estate, real and personal, owned by the commonwealth for the use of the said canal. And by another act passed on the 9th of April, 1849, it was inter alia provided, that the said company, instead of constructing the canal, or completing and repairing the work done thereon by the commonwealth, should have the privilege of constructing a railroad, if deemed most expedient, and using the graded line or towing path of the canal as the bed of the road; and with the further privilege, upon the increase of their stock to the amount of five hundred thousand dollars, of extending the same from the north end of said Franklin Canal to Lake Erie, and from the south end thereof to Pittsburgh, by such route as the said company might deem most expedient and advantageous, but subject to the provisions and restrictions of the act of assembly of the 19th of February, 1849, regulating railroad companies. Such, in brief, is the substance of the chartered privileges of the Franklin Canal Company.

How did the complainants become invested with these privileges, or any part of them?

In their bill they say, "that large sums of money being required for the construction of the railroad from the boundary line of the state of Pennsylvania to the city of Erie, the complainants became the owners of a large amount of stock of the Franklin Canal Company, to the amount of $448,500, the whole capital stock being $500,000, and that they also advanced large sums and guaranteed the bonds of the said company to the amount of $50,000," and to indemnify themselves for these advances for stock and pecuniary liabilities, they entered into a contract and agreement with the Franklin Canal Company, dated the 14th of May, 1851, in which, among other matters, they say "that pursuant to the terms of the statute of the states of Ohio and Pennsylvania, incorporating them, and other statutes affecting them, they are engaged in constructing a railroad from the city of Cleveland to the easterly line of the state of Ohio, in the direction of the borough of Erie, in the state of Pennsylvania, and from that state line to the borough of Erie, in connection with and forming a continuation of the railroad of the complainants. The complainants then agree to enable the Franklin Canal Company to complete their part of the road, to advance and pay for iron, and the transportation thereof, the sum of $125,000, and $125,000 in money, payable in instalments; they also agree to furnish the engines, cars, and equipments for securing the entire route from Cleveland to Erie, for all which the Franklin Canal Company agree to give their bonds with interest, at seven per cent. per annum, payable on the first of February, 1861; which bonds are to be secured by mortgage to be the first lien upon the division of the road between the Pennsylvania line and Erie. The Franklin Canal Company also agree to pay to the complainants commissions, discounts and expenses, for raising the money agreed to be paid, and for the purchase and transporting the iron. Each party agrees to keep their respective portions of the road in repair. And it is further agreed that the complainants, as soon as the roads are completed from Cleveland to Erie, shall assume and thereafter during their existence have the entire control and management of the transportation of persons and property, with power to appoint all necessary officers, superintendents and agents, to collect all the tolls and revenues, and to do whatever else is lawful and needful in the management and transportation department of the railroad, and all such tolls, revenues, incomes and receipts which shall be collected either upon or for the interest of either road, shall go into one common treasury. They further agree that no contract, lease or agreement injurious to either of the parties shall be made by either party with any other railroad company, or person or persons whatsoever, without the consent of both parties, the terms and conditions of the agreement to be in full force and binding upon both parties for and during the existence of the complainants and all contracts and arrangements heretofore made between the parties to their agreement are declared to be void.

It thus appears that the complainants, under a charter from the state of Ohio for making a railroad within that state, have become shareholders to the amount of four hundred and forty eight thousand five hundred dollars, of a capital stock of five hundred thousand dollars, in the Franklin Canal Company, chartered by the state of Pennsylvania to make a canal or railroad between certain designated points, to which the whole of that capital stock could alone be legitimately appropriated. Has this been done? By the agreement there was a common object which both companies determined to effect, and have since effected,—the making of a continuous railroad from Cleveland in Ohio, along the shore of Lake Erie, to the city of Erie, in Pennsylvania. For this purpose the whole available capital stock of the Franklin Canal Company is authorized to be used by the complainants; their advances secured by mortgage on the road, by way of lien, with power to appoint all the officers and agents of the company, to receive its profits, make disbursements, and finally to conduct all its operations during the corporate existence of the complainants. By these concessions several of the essential franchises of the Franklin Canal Company became merged in the Cleveland, Painesville and Ashtabula Railroad Company. Whether they amount to such an abuse of the corporate powers of the former company, as to disable the complainants, who were parties to them, from claiming the equitable interposition of this court, by way of injunction, or otherwise, I will not now stop to inquire. All the available pecuniary resources of the Franklin Canal Company have been appropriated, and it would seem exhausted, in making a road from the state line to and within the city of Erie. Is this the road which they are required to make by their charter? On this part of the case I am relieved from making any remarks by the opinion of the supreme court of the state, given after a full hearing in the case of Com. v. Franklin Canal Co. [21 Pa. St. 117]. In this opinion I fully concur, but from which, if I differed, I should feel myself bound to regard as the settled judicial interpretation of the several statutes of the state, under which the Franklin Canal Company derives its chartered rights. The chief justice, after an examination of several acts of assembly conferring corporate powers on the Franklin Canal Company, says: "The road made by the defendants begins at the depot of the Erie and North East Railroad, three-quarters of a mile from the lake, and one hundred and ten feet above it, and runs thence directly as the nature of the ground will permit, to that point on the Ohio state line, where

the Cleveland, Painesville and Ashtabula Railroad meets it, and there it stops. We do not say that there is any obligation to begin at one place more than another; and if this could properly be called a part of the work required, it might very well be justified. But it is no part of the road chartered; it is the whole of another road not chartered. It bears no resemblance to that described in the act of incorporation; it is different at both ends—different in character, location and object, and is used at this moment for purposes totally opposite to those which the legislature ever expressed an intention to permit."

There was no decree in this case; but it is not a judgment or decree, but the interpretations and decisions of the highest court of the state, on matters arising out of their own statutes, which this court is bound to regard. It is what in such cases they declared to be the law, which is the law for this court. A judgment or decree may be for many reasons rendered unnecessary; but the law as pronounced must be the rule of action until reversed. It must follow, from this opinion, that the railroad made from the state line where it connects with the road of the complainants along the shore of Lake Erie to the city, and within the city of Erie, is not the road, or any part of the road, for which a charter was granted to the Franklin Canal Company; and as complainants claim under this charter, and do not pretend that there was any other authority for making it, I must conclude that it was made without lawful authority, and without regard to the eminent domain of the state. The duties assigned by an act of incorporation, are conditions annexed to the grant of the franchises conferred, and it is a tacit condition of the grant that the grantees shall act up to the end or design for which they were incorporated. This the Franklin Canal Company have not done; and although the abuses of their charter cannot be enquired into collaterally, yet if they act without charter, and do what is essentially different from what they are authorized to do, as by making a canal instead of a road, or a road other than that expressly designated in their charter, they would be trespassing upon the ground they occupied, and subject to immediate proceedings for eviction, although their charter should not be judicially annulled. The supreme court of the state have said that the road which the Franklin Canal Company have made is "the whole of another road not chartered," and by the agreement which that company has made with the complainants by which they have absorbed all their available capital stock in making that unchartered road, it is not assuming too much to say that the road which the Franklin Canal Company are required to make by their charter, never will, in the present situation of that company, be made. They have disabled themselves from doing it,

and also of complying with the act under which they hold their charter.

Regarding then the railroad made from the western boundary of the state of Pennsylvania along the shore of Lake Erie to and into the city of Erie, as not being made under the charter granted to the Franklin Canal Company, and as being unauthorized by any law of Pennsylvania, how will it affect the complainants in their prayer for a special injunction? It is not enough that they are entitled to sue in this court, and that there is danger of immediate and irreparable injury to their property; for if the bill discloses that they are not invested with a legal or equitable title, right or interest in that on which their claims alone are based, and which would certainly prevent a decree in their favor upon a final hearing, the prayer for a special injunction must be refused. In their bill the complainants say in substance that they are shareholders in the Franklin Canal Company, which derived its charter from the statutes of Pennsylvania, and that they entered into an agreement with that company, by which they have large pecuniary interests and other advantages secured to them, and that they have made a railroad from Cleveland along the lake shore to the Pennsylvania line and from thence to the city of Erie; the latter division being the railroad, or a part of it, which the Franklin Canal Company was, by its charter, required to make. Though purchasers of the stock of that company to a very large amount, they do not claim relief from this court merely as shareholders; but, under their agreement, by which among many concessions, they are entitled to the whole control of the road during their corporate existence. Now it has appeared that there was nothing done by the Franklin Canal Company as required by their charter. They did not make the railroad specified in their charter, or any part of it, but under the agreement referred to, another road was made, either separately or in connection with the complainants' road. On the part of the Franklin Canal Company this was, in law, a fraudulent diversion of their stock and funds, and a transfer of material parts of their corporate powers for an object wholly inconsistent with and at variance with these powers. The complainants purchased stock of the company to the amount of $448,500, and from that time were members of the corporation; and it is fairly inferable that they were then, if not before, fully informed of their chartered privileges, obligations, and disabilities. But instead of making the road required by their charter, they made another; different on its whole line and different in termini. The complainants may have been ignorant of this fraud in law, and may have done nothing more than, by their charter from the state of Ohio, they were authorized to do. But when a court of equity is invoked to enforce a specific performance of

an agreement tainted with fraud in law, on the part of one of the contracting parties, and of which fraud the other party, if not the participants, were its beneficiaries, it would, as soon as the rules permitted, be prompt in dismissing the bill, and in rejecting the prayer for an injunction. Exclusive privileges by charter are granted by a state, in trust as well for the public as the persons to whom they are granted; and although the state courts are alone competent to inquire into an alleged abuse of these privileges, there is nothing to prevent the complainants from filing a bill in this court to enforce the agreement arising out of the charter, and to which agreement they are parties. But where, as is the case before the court, a bill seeks the enforcement of an agreement, in terms not expressly forbidden by law, but which requires either party to it to do, or to omit to do anything the obvious effect of which would be to defeat or evade the obligations and trusts of that law, to the manifest injury or wrong of a third party, though not a party to the agreement or to the suit. I know of no principle of equity by which it could for a moment be sustained. The complainants rest their prayer for an injunction upon an agreement founded exclusively upon the charter of the Franklin Canal Company, and the acts of assembly connected with it. If that company has done great wrong by the act out of which this controversy has arisen; if they have disabled themselves from performing their obligations and trusts, and for which it is apparent they may be lawfully held to answer, the party benefited by that wrong cannot, surely, reasonably expect a court of equity to interfere by decree to maintain that wrong. Enough has been said to show that the preventive remedy by injunction should not be employed to protect the property which the complainants claim under the agreement referred to.

But the complainants allege that they are entitled to an injunction on another ground. They are contractors for carrying the mail of the United States over the road they have made, in railroad cars from Cleveland to Erie and from thence back to Cleveland; and by an act of congress this road has been made a post road. The power given by the constitution to establish post roads has always been construed to mean, and as I think rightly, such roads as were regularly laid out by authority of the states, or by counties under the laws of the states. The government of the United States cannot construct a post road within a state of this Union without its consent; but congress may declare, that is, establish, such a road already opened and made a public highway by the direct or indirect authority of the state. The post roads of the United States are the property of the states through which they pass; they may temporarily part with the possession of them by charter, and the grantees, while the charter continues, have the right to preserve such roads, and prevent their threatened destruction. The United States have the mere right of transit over these roads for the purpose of carrying the mail, and in case of obstructing this right their laws provide an adequate remedy. The government itself could not obtain the injunction applied for to prevent the destruction of a mail road; the right to do so follows the right of property or possession; a mail contractor and any other person may have a right of action for damages in the courts of the state, for an obstruction to a mail road, or the wrongdoer there may be punished by indictment, but no injunction can legally issue upon an application to restrain a threatened injury to the road. This power must always be exercised with great caution; to allow it in a case like this, would be an alarming extension of jurisdiction, open to great abuses and extending over many thousands of miles, and to persons who as mail contractors, have no interest in the roads they pass over. The act of congress making all railroads post roads, means only such as have charters from the several states; it is not to be inferred that they intended to do anything in derogation of the sovereignty of a state, by declaring that to be a post road which was the work of an individual or of a company for his or their profit without law, or it may be in opposition to law. The road of the complainants was made a post road either from mistake or misrepresentation, and it is to be presumed without information to the department charged with making contracts for carrying the mail, that it was not authorized by law. The bill shows no sufficient cause for the interposition of this court. The prayer, therefore, for a special injunction, is dismissed, with costs.